Nichols, C. J.
Substantially the same question is involved in each of the three above-entitled cases, and they will be considered and disposed of as one.
In the Wagner case, Sarah V. Armstrong and others filed petition in the court of common pleas of Seneca county, praying for partition of certain real estate and an accounting for rents and profits. The case was decided adversely to the aefendant, Otto Wagner, who thereupon appealed the case to the court of appeals of Seneca county.
In the Walker case, Mary Helen Walker and others filed petition against Frances Burtscher and others in the court of common pleas of Stark county, asking for a construction of the will of Joseph Wagner, Sr., the partition of certain real estate and an accounting for rents and profits. This case was decided adversely to the plaintiffs *445 below, who appealed the cause to the court of appeals of Stark county.
In the James case, William M. Vulgamore and others filed their amended petition against Louisa F. James, as guardian, and others, in the court of common pleas of Pike county, praying for the partition of certain real estate situated in that county. This case was decided against Louisa F. James, as guardian, who thereupon appealed the cause to the court of appeals of Pike county. .
In each of these cases a motion was filed to dismiss the appeal for want of jurisdiction, and in each instance the motion was sustained.
Error was prosecuted in all of the cases to the supreme court of Ohio.
Three important questions must be met and disposed of in these cases before we can arrive at a correct decision. In the order of their logical arrangement they may be said to be as follows:
First. Is Section 12224, General Code, constitutional ?
Second. Was a partition proceeding originally recognized as a subject of chancery jurisdiction?
Third. If the second question be answered affirmatively, does the fact that the statutes of Ohio provide a method of securing partition and courts of law administer the remedy, change the action from one of chancery to one of law?
There is no difficulty about the first of this series of questions. Clearly Section 12224, as enacted April 29, 1913 (103 O. L., 429), is unconstitutional. This section reads: “In addition to the cases and matters specially provided for, an appeal may be *446 taken to the court of appeals by a party or other person directly affected, from a judgment or final order in a civil action rendered by the common pleas court, and of which it had original jurisdiction, if the right to demand a jury therein did not exist * * * .”
Here is a plain attempt to enlarge the jurisdiction on appeal of the courts of appeals. This is a power that the general assembly does not possess. It was decided -by this court in The Cincinnati Polyclinic v. Balch, 92 Ohio St., 415, that the jurisdiction of the courts of appeals was unalterably fixed by Section 6, Article IV of the new Constitution, and the legislature consequently could neither enlarge nor diminish it. Section 12224 attempts to enlarge the jurisdiction of the courts of appeals in appeal cases. When it says that all cases may be appealed wherein the right of trial by jury did not exist, it contravenes the jurisdiction fixed by the constitution wherein it limits the jurisdiction by way of appeal to chancery cases. The test of the right of trial by jury is no longer the determinative one.
While a chancery case is now one, generally speaking, where the right of trial by jury does not exist, yet there are a multitude of actions and proceedings provided for by statute, not chancery in their nature, wherein the right of trial by jury does not exist.
The cases under consideration are therefore appealable, if at all, by direct favor of the constitution and not by virtue of any statutory enactment.
*447 The general assembly may regulate the mode and method of appeal; that is, it may provide for bond, may fix the time within which appeal may be had, may require notice, etc., but here its province ends.
The second question may likewise be answered affirmatively.
Abundant authority may be found in support of the proposition that, an action in partition was originally recognized universally as a subject of chancery jurisdiction.
In England, to this very day, partition proceedings are determinable exclusively in the courts of chancery, and it was so in the United States until provision was made by statute in the various states for the partition of real property.
Tiffany, in Volume 1 of The Law of Real Property, says, in Section 175': “In the time of Elizabeth, if not earlier, the court of chancery began to take jurisdiction of suits for partition, and by statute passed in 1833 a bill in equity was made the only form of proceeding.” Pomeroy, in Volume 6 on Equity Jurisprudence (1905 ed.), says, in Section 702: “ The operation of the common-law remedy, even after its extension to joint tenancies and tenancies in common, was imperfect and narrow. The writ of partition lay only against the tenant in possession, and was incompetent to reach the remainderman or the reversioner.’ * * * Moreover, a court of law was unable to adjust the often complicated rights of the' parties, as where one co-tenant had laid out large sums for improvements, or had erected *448 valuable buildings, or had been in receipt of all the rents and profits. A court of law could not order a sale, but could only make an actual partition, although, this might often work a great hardship or even result in a virtual destruction of the property.”
The supreme court of Ohio, in the case of Linton v. Laycock et al., 33 Ohio St., 128, at page 133, speaking through Day, J., says: “Partition was always a subject of equity jurisdiction.”
Counsel for the defendants in error in the several cases all join in saying that, conceding the correctness of our conclusion as to the second proposition, nevertheless the fact that the general assembly has provided a complete remedy by law for the right of partition, the statutory remedy becomes the exclusive one, and the subject of partition thereby loses its chancery nature and has become cognizable only in courts of law.
We therefore now search for the correct solution of the third proposition. Divergent views are clearly possible on this matter. Perhaps one’s disposition as to the nature of the construction to be given a constitutional provision might influence if not determine one’s conclusion. If we were disposed to construe the instrument narrowly and strictly, we might readily hold with the defendants in error. On the other hand, were we of a mind to give this instrument a broad and liberal interpretation, ' a contrary conclusion would be reached.'
In this connection it is proper to say that an exhaustive examination of the debates of the con *449 stitutional convention fails to afford any material aid to the court in determining just what was intended when it was written into the constitution that the courts of appeals should haye appellate jurisdiction in the trial of chancery cases.
The original proposal on the subject of the jurisdiction of the courts of appeals made no provision whatever for the trial on appeal in any case. It limited the jurisdiction of that court to error proceedings exclusively. Effort was made to amend the original proposal by adding to the jurisdiction of that court jurisdiction to try de novo cases wherein the right of trial by jury did not exist. This proposition was defeated, and 'finally the language, we now find therein was incorporated.
The convention was informed by lawyers of recognized ability who were members of that body that appellate jurisdiction in the trial of chancery cases conferred the right of appeal where there had been no trial by jury and where there was no right of trial by jury. See page 1829, Vol. 2, Constitutional Debates. Again, it was said: “We have been used to this right of appeal in chancery cases for a great many years in Ohio.” Page 1827, Vol. 2, Constitutional Debates.
It is most likely that the convention, in adopting the language.we find on this subject in the constitution, thought it was making no change as to the right of appeal and was making provision for the appeal of all cases, as was then provided for by statute.
*450 This court, as indicated in the consideration of the first proposition, is wholly unable to give to the words “chancery cases” the enlarged interpretation of “cases in which the parties were not entitled to a trial by jury.”
■ The most liberal possible construction of this language would not justify any such conclusion. Were we so to construe this provision this court would thereby be open to the just charge of writing into the constitution matters and things that' might suit our own fancy and consonant with our own ideas as to what should have been incorporated therein. •
Appealable cases, therefore, must be such cases as are now recognized as equitable in their nature; and perhaps the better way to express it would be, cases that were recognized as equitable actions before the adoption of the code of civil procedure, for, while our code established under one grand division all actions, whether of an equitable or a legal nature, and called them civil actions, yet there was no attempt to change the nature of the remedy. Section 11238, General Code, says: “There shall be but one form of action, to be known as a civil action. This requirement does not affect any substantive right or liability, legal or equitable.”
The question yet remains, however, Does the fact that there has been provided a statutory proceeding in partition operate to exclude partition from the category of chancery cases?
The authorities on this subject are not all one way; but it can be ascertained by an independent *451 examination of the authorities that the great weight favors the doctrine that the statutory remedy is cumulative and does not supersede the original jurisdiction in equity. We are fortified, too, in this respect by the views expressed by the leading text-writers on equity jurisdiction.
In 1 Story’s Equity Jurisprudence (13 ed.), paragraph 658, we find: “It is upon some or all of these grounds, the necessity of a discovery of titles, the inadequacy of the remedy at law, the difficulty of making the appropriate and indispensable compensatory adjustments, the peculiar remedial processes of courts of equity, and their ability to clear away all intermediate obstructions against complete justice, that these courts have assumed a general concurrent jurisdiction with courts of law in all cases of partition. So that it is not deemed necessary to state in the bill any peculiar ground of equitable interference.”
Freeman, in his work on Cotenancy and Partition (2 ed.), has said, at page 559: “In some of the states, the jurisdiction of the proceedings authorized by these statutes is confided to courts of law; in others, to courts of equity. * * * The remedy thus created by statute is, we think, generally, but not universally, considered as cumulative, and as in no way divesting courts of equity of their jurisdiction over the same subject matter.”
The same authority, on page 461, says: “In several of the states, the courts designated by statute to exercise authority over suits of partition, are courts having both a common law and a chancery jurisdiction. When proceedings to com *452 pel partition are pending in such courts, or even after such proceedings have been consummated, the question must frequently arise whether the jurisdiction which the court has exercised is a common law jurisdiction, a chancery jurisdiction, or a special statutory jurisdiction.”
The author, in the same section, then proceeds to quote with approval quite freely from the case of Wright v. Marsh, 2 G. Greene (Iowa), 104. This last-cited case may be said to be one of commanding authority. At any rate it is quoted with approval by Freeman, Story and Pomeroy. This case holds that principles of law and equity are united and applied by the partition act of Iowa; that in partition proceedings the jurisdiction of the district court is three-fold: (1) Cumulative and special as created by statute. (2) Having full chancery attributes, except as otherwise provided by law. (3) General common-law authority, so far as it could be exercised with the two preceding powers.
In the course of the opinion, Greene, J., at page 105, says: “The doctrine is now universally conceded, that courts of equity may exercise a general concurrent jurisdiction with courts of law in all partition cases.”
It may be pertinent to say in this connection that the code of civil procedure and the statutory partition proceedings of Iowa were then substantially similar to those of Ohio now.
The older authorities really throw more light on the subject than the more modern ones; and quite naturally, for before the consolidation of all *453 remedial actions into the so-called civil actions, the line of demarcation between cases in chancery and those at law was more clearly drawn and was under consideration by the courts much more frequently than at present.
With this state of affairs in mind, it is proper that the early case of Cram et al. v. Green et al., 6 Ohio, 429, should have much weight on the subject in hand. Lane, J., at page 430, says:
“The argument for the demurrants is this: Our statute limits the jurisdiction of chancery to cases where no plain and adequate remedy can be had at law. Such remedy is provided for by law in cases like the present; and, therefore, if the jurisdiction subsisted before this provision, it takes it away.
“I do not stop to inquire if such remedy is, in fact, provided.
“Were it the case, we do not admit the conclusions contended for. ‘That the chancellor has jurisdiction in those cases where a plain, adequate, and complete remedy can not be had at law,’ is the apothegm by which his power is limited' in every country where the distinction is known between courts of law and equity. The extent of the restriction has been long since defined. It is a technical maxim, adopted by our legislature in its technical sense, and receives the same interpretation here as elsewhere. In our practice, we do not give it the restrictive meaning insisted upon by the defendants. But sustain our' powers to the same extent as other similar tribunals, where jurisdiction depends upon this principle. It is a part of the general chancery law, that where a class of *454 cases are the objects of chancery jurisdiction, that jurisdiction is not taken away, because courts of law subsequently administer a remedy. 1 Ohio 435.”
Pomeroy, at Section 62 in Volume 1 of his work on Equity Jurisprudence, under the head of “How the Equitable Jurisdiction is Determined at the Present Day,” says: “The whole question by which the extent of the equity jurisdiction is practically determined is no longer, whether the case is omitted by the law, or the legal rule is unjust, or even the legal remedy is inadequate, — although the latter inquiry is still sometimes made and treated as though it were controlling, — the question is, rather, whether the circumstances and relations presented by the particular case are fairly embraced within any of the settled principles and heads of jurisdiction which are generally acknowledged as constituting the department of equity. Two results therefore follow: First, a court of equity will not, unless perhaps in some very exceptional case, assume jurisdiction over a controversy the facts of which do not bring it within some general principle or acknowledged head of the equitable jurisprudence; and secondly, if the circumstances do bring the case within any of these principles or heads, a jurisdiction over it will be maintained, although the law may have been so altered by judicial action or by positive legislation that it has supplied the original omission, or has brought the legal rule into conformity with justice, or has furnished an adequate legal remedy.”
*455 From these authorities the doctrine may be safely laid down that a case concededly chancery in its nature and calling for an equitable remedy will continue so, in spite of the fact that the law may have formally adopted the offspring of chancery. In short, once a chancery case, always a chancery case, at least for jurisdictional purposes.
It is the law of Ohio, as established by the case of Feuchter v. Keyl et al., 48 Ohio St., 357, and City of Zanesville v. Fannan, 53 Ohio St., 605, that where a new remedy is given by statute for a right of action existing independent of it, without expressly excluding any former remedy, the statutory remedy is cumulative merely.
Applying this doctrine to the instant case, the conclusion is inevitable that the creation of statutory partition proceedings,, even though the remedy be fully as adequate as the remedy provided by chancery,, does not oust the old remedy, but is merely cumulative, for it will not be claimed that the partition statutes of Ohio expressly exclude the then existing equitable remedy.
The term “chancery” is not to be found in our present statute law, nor is it to be found in the Constitution of 1851, but it is not unknown to the Constitution of 1802. Section 2, Article III of the original Constitution provides: “The supreme court shall consist of three judges, any two of whom shall be a quorum. They' shall have original and appellate jurisdiction, both in common law and chancery, in such cases as shall be directed by law.”
*456 We find the term again in Section. 3 of Article III, which provides for the formation of courts of common pleas and. contains the provision that such court shall have common-law and chancery jurisdiction in all such cases as shall be directed by law.
We will not attempt to categorically and finally answer the much-mooted question, What is a chancery case?
It would be a difficult if not dangerous thing to do and of doubtful benefit. It ought, however, to be approached, generally speaking, not from the modern viewpoint, but rather from the old-time conception. Especially would this be so with reference to well-recognized equitable remedies known to the courts prior to the adoption of the code of civil procedure.
This much, however, may safely be said. A chancery case is one in which, according to the usages and practices in courts of chancery prior to and at the time of the adoption of the code of civil procedure, remedies were awarded in accordance with the principles of equity and not in accordance with rules of law. And the proper definition of the term in our new constitution cannot be regarded as affected by the provisions of statutes relating to appeals nor by the introduction bodily of equitable remedies into our statutes.
It would not do, however, to lay down the hard- and-fast rule that only such chancery cases as were known to that period of our legal history could have been intended by the constitution makers as being the cases subject to appeal. The changing condition of the times, development along new *457 lines, the springing up of new problems, progress in many of the avenues of life — these things beget new rights and obligations that call for new equitable remedies.
Equity is not only elastic as to its remedies but it is progressive.
Its principles are indeed immutable, founded as they are on exact justice and equality before the law, but equitable remedies are constantly subject to enlargement.
These considerations make it manifest, therefore, that an all-embracing and satisfactory definition of a chancery case would be most difficult to obtain, and if obtainable, might well promote injustice rather than justice.
The terms “equity” and “chancery” are interchangeable and are constantly used as synonymous in all of our states as well as in England. Equity itself is not easily defined; that is, to give an all-inclusive definition of the term. It is of course capable of definition. But it is quite a different matter to define a case in equity.
Partition, from its very nature, must have been one of.the.most-favored subjects of chancery jurisdiction. The law could not dissolve the relation of coparceners without consent of all. It was and is an adversary proceeding. The ownership of each cotenant extended to every foot of the ground thus jointly owned. It was not just, when separation was desired, to compel the continuation of the joint ownership. The situation appealed strongly to the conscience of the chancellor, so he proceeds, through the intervention of his chosen *458 representatives, in the person of commissioners, to dissolve the relation, and assigns to the several parties a separate and distinct aliquot part, according to justice and equity. One out of a dozen joint owners could demand in equity this forced division and, if incapable of division, a sale and division of the proceeds. The statutes we now have facilitate and simplify the separation of the whole into parts, but in its very essence the action now, as in the beginning, is of an equitable nature. It would be difficult to suggest any remedy known to jurisprudence that partakes more clearly of chancery jurisdiction than the action of partition.
The argument advanced by the several defendants in error is out of harmony with the conclusion of this court in the case of The Cincinnati Polyclinic v. Balch, supra, wherein it was held that the jurisdiction of the courts of appeals, both on appeal and on error, was constitutionally fixed, with no power in the general assembly to abridge, enlarge or interfere with it in any respect. For if the mere fact that the general assembly, by providing by law, even though adequately, a remedy for the various rights now and heretofore enforced in equitable proceedings, changes the nature of the case from a chancery case to a lawsuit, then the general assembly can utterly destroy and annul the new jurisdiction on appeal conferred on the courts of appeals in chancery cases by the simple process of making statutory proceedings of all equitable causes of action.
Thus, by indirection, the general assembly could do the very thing which we have expressly said in *459 the Polyclinic case it is without power to do directly.
The general assembly that provided the statutory partition proceedings clearly recognized the chancery character of the remedy needful in partition proceedings, for it should not be overlooked that in Section 12031, General Code, the commissioners in partition are directed by law to “set it apart in such lots as will be most advantageous and equitable.” And again, in Section 12050, we find provision that “Having regard to the interest of the parties, the benefit each may derive from a partition, and according to equity, the court shall tax the costs and expenses which accrue in the action,” etc.
We are content to say that a partition case must be regarded as appealable; and this quite apart from incidental questions that may arise in such an action, such as an accounting between tenants in common for rents and profits, accounting for improvements claimed to have been made by an occupying tenant in common, construction of the provisions of a will to determine the respective interests of the tenants in common, etc.
It would be particularly unfortunate if the court should attempt to classify partition cases, saying some were and others were not appealable.
A case wherein simple division of the property among coparceners is sought may be regarded as appealable. This being so, it follows as a matter of course that all other partition cases, where further rights and questions are to be determined, are likewise appealable.
We arrive at this conclusion without reluctance. Not only is it the law, but we feel it to be in line with *460 the purpose of the constitution makers and not out of line with the principle of one trial and one review. This principle had its inception in the purpose of limiting to one review cases which had been tried by juries, where not only the trial judge, but twelve citizens of the state sitting as a jury, had determined the rights of the parties. In cases where one man sitting as a court of equity has determined the issues, it is only substantial justice that a de novo hearing be had.
This conclusion will not sensibly increase the labors of the courts of appeals; certainly not beyond the work of the old circuit courts, where the right of appeal was much broader than it can ever be under the new constitution.
Furthermore, if the right of appeal were denied in cases of the character under consideration, the parties would still have the right to prosecute error, thus reaching the court of appeals in any event and thereby calling for its action.
The judgment of the courts of appeals in each of these cases will be reversed and the cases will be remanded with instruction to overrule in each instance the motion to dismiss the appeal for want of jurisdiction.

Judgments reversed.

Johnson, Donahue, Wanamaker and Newman, JJ., concur.
Jones and Matthias, JJ., concur in the first proposition of the syllabus.